**No. 2013-1535**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

_____

**IN RE THE NEWBRIDGE CUTLERY COMPANY
(trading as Newbridge Silverware)**

_____

On Appeal from the United States Patent and Trademark Office,
Trademark Trial and Appeal Board in Serial No. 79094236.

_____

**OPENING BRIEF FOR APPELLANT
THE NEWBRIDGE CUTLERY COMPANY**

_____

**CORRECTED BRIEF**

Philip Raible
Rayner Rowe LLP
75 Rockefeller Plaza –
   20th  Floor
New York, New York 10019
Telephone:  (212) 763-5068
E-mail:  Phil@raynerrowe.com

*Counsel for Appellant*

## CERTIFICATE OF INTEREST

In re: The Newbridge Cutlery Co.

No. 2013-1535

Counsel for the appellant Newbridge Cutlery Co. certifies the following:

1.    The full name of every party or amicus represented by me is:

**The Newbridge Cutlery Company (trading as "Newbridge Silverware")**

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

**NONE**

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

**Mona Doyle Enterprises Ltd. (Isle of Man)**

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

**Anderson Kill & Olick, P.C. (through Jeffrey Glen and Kanishka Agarwala, Esqs.)**

**Rayner Rowe LLP (through Philip Raible, Esq.)**

        /s/ Philip Raible
        Philip Raible
        Rayner Rowe LLP

        *Counsel for Appellant*

i

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES ....................................................... 1

JURISDICTIONAL STATEMENT .......................................................... 1

STATEMENT OF THE CASE ................................................................. 1

STATEMENT OF THE ISSUES .............................................................. 2

SUMMARY OF ARGUMENT ................................................................ 2

STANDARD OF REVIEW ..................................................................... 5

STATEMENT OF RELEVANT FACTS ................................................. 5

I.  OVERVIEW ................................................................................... 5

II.  THE EXAMINING ATTORNEY'S EVIDENTIARY RECORD .................... 7

III.  APPELLANTS' EVIDENTIARY RECORD ................................................ 11

ARGUMENT ........................................................................................ 12

INTRODUCTION ................................................................................. 12

POINT I  THE MARK IS NOT GEOGRAPHICALLY DESCRIPTIVE .............. 14

    A.  The Legal Test ......................................................................... 14

    B.  Neither the TTAB not the Examining Attorney established who forms
        the "relevant public" ................................................................ 14

    C.  There is no evidence in the record to establish that the Newbridge in
        County Kildare is not obscure, minor and remote ........................ 16

    D.  The primary significance of "Newbridge" is not geographical ............. 21

    E.  That there are numerous "Newbridges" establishes that a goods/place
        association will not be made with Newbridge, County Kildare ........ 23

    F.  The PTO has granted registration to marks containing the term
        "Newbridge" ........................................................................... 26

POINT II  IF NEWBRIDGE IN IRELAND IS KNOWN TO AMERICAN
CONSUMERS, IT IS BECAUSE THE FAME OF APPLICANT'S PRODUCTS
HAS MADE IT SO; THE PRIMARY ASSOCIATION OF THE TERM
"NEWBRIDGE" IS WITH APPELLANT'S GOODS AND NOT WITH THE
TOWN WHERE THEY ARE MADE ............................................................ 27

CONCLUSION ..................................................................................... 31

ADDENDUM…………………………………………………………...…32

CERTIFICATE OF SERVICE................................................................................33

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS……..34

nydocs1-1018595.5

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Dickinson v. Zurko*, 527 U.S. 150 (1999) ……………………………………….…5

*Federal Trade Commission v. New River Mining Co.*,
79 F.2d 457 (4th Cir. 1935) ............................................................................30

*Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261
 (Fed. Cir. 2002)………………………………………………………….…5

*In re Bavaria St. Pauli Brauerie Ag*,
222 USPQ 926 (TTAB 1984)..........................................................................18

*In re Brasserie D'Achouffe*,
Serial No. 79107741, TTAB Sept. 26, 2013 ..........................................................28

*In re Braurerie Aying Franz Inselkammer KG*,
217 USPQ 73 (TTAB 1984)..............................................................................30

*In re Brouwerij Nacional Balashi NV*,
80 U.S.P.Q.2d 1820,1821 (TTAB 2006).............................................................14

*In re California Innovations, Inc.*, 329 F.3d 1334 (Fed. Cir. 2003)………………….5

*In re Eastern National*,
2001 WL 1547936 (TTAB Nov. 29, 2001).......................................................23, 27

*In re International Taste Inc.*,
53 U.S.P.Q.2d 1604, 2000 WL 177409 (TTAB 2000) ...........................................26

*In re Joint-Stock Co. "Baik"*,
80 USPQ2d 1305 (TTAB 2006)............................................................................15

*In re Loew's Theatres, Inc.*,
769 F.2d 764 (Fed. Cir. 1985) ............................................................................25

*In re Namibia Breweries Limited*,
2011 TTAB LEXIS 309 (TTAB Sept. 12, 2011).......................................19, 20, 21

iv

*In re Nantucket, Inc.*,
677 F.2d 95 (CCPA 1982) ....................................................................16

*In re Societe Generale des Eaux Minerales de Vittel S.A.*,
824 F.2d 957 (Fed. Cir. 1987)........................................... 14, 15, 16, 17, 21

*In re Trans Continental Records, Inc.*,
62 U.S.P.Q.2d 1541, 2002 WL 448738 (T.T.A.B. 2002) ......................................29

*In re Wada*, 194 F.3d 1297
(Fed.Cir.1999)………………………………………………………….…11

*La Republique Francaise v. Saratoga Vichy Spring Co.*,
191 U.S. 427, 24 S.Ct. 145, 48 L.Ed. 247 (1903)……………………………………29

*The Board of Trustees of the University of Arkansas v. Professional Therapy Services*,
873 F.Supp. 1280, 34 USPQ2d 1241 (W.D.Ark. 1995).........................................29

*World Carpets, Inc. v. Dick Littrell's New World Carpets*,
438 F.2d 482, (5th Cir. 1971)..................................................................26

## STATUTES

28 U.S.C. § 1295(a)(4)(B)........................................................................1

Trademark Act § 2(e)(2) ...........................................................................2

## STATEMENT OF RELATED CASES

There is no other appeal in or from the same trademark application in this or any other appellate court.

## JURISDICTIONAL STATEMENT

The statutory basis for jurisdiction of this Court is 28 U.S.C. § 1295(a)(4)(B).

## STATEMENT OF THE CASE

Appellant Newbridge Cutlery is engaged in the manufacture and sale of housewares, kitchen ware, and silverware throughout the world.  It sells its products under the mark NEWBRIDGE HOME.

Newbridge Cutlery seeks registration on the Principal Register of that mark.  Registration was refused by the United States Patent and Trademark Office ("PTO"), which refusal was affirmed by the Trademark Trial and Appeal Board ("TTAB") in an opinion dated April 29, 2013.  A 1-11.  Notice of appeal was timely served and filed June 26, 2013.  A 558.

Appellee is the Under Secretary of Commerce for Intellectual Property and Director of the PTO.

## STATEMENT OF THE ISSUES

1.    Whether the PTO met its burden of establishing that the mark NEWBRIDGE HOME is primarily geographically descriptive under §2(e)(2) of the Trademark Act and therefore not registerable under that section.

2.    Whether the evidence presented by the PTO is sufficient to show that the term "Newbridge" is generally known to the relevant American buying public as the name of an Irish town.

3.    Whether the PTO may utilize references to the Appellant to show that the primary significance of "Newbridge" is a geographical place with which the American public is familiar.

## SUMMARY OF ARGUMENT

The PTO's refusal to register the mark "NEWBRIDGE HOME" is an erroneous application of section 2(e) of the Trademark Act.

The TTAB's holding that the mark is primarily geographically descriptive is wrong on the law, and wrong on the facts.   As demonstrated in Point I of this brief, the Trademark Office failed to provide any competent evidence as to the legally required criteria for refusal to register a mark on the stated ground:

- There is no evidence in the record at all as to the composition of the relevant American public that would contemplate purchasing goods bearing the mark. Point I-B.

2

- The Examining Attorney, upon whom the burden lies to demonstrate that the mark is primarily geographically descriptive, failed to establish that term "Newbridge" conjures up a geographical place with which the relevant American public is familiar. To any relevant American public, "Newbridge" in County Kildare in Ireland is obscure, minor, and remote. Point I-C.

- That Newbridge is obscure, minor and remote is compelled by the analysis of this Court in the *Vittel* case, and a number of TTAB cases decided subsequent to *Vittel*. Point I-C.

- Uncontroverted evidence demonstrates that the term "Newbridge" is used primarily and overwhelmingly in a non-geographic sense by a myriad of businesses and institutions in the United States having nothing to do with Newbridge, County Kildare, making a finding that the mark is primarily geographically descriptive of Newbridge, County Kildare, wrong as a matter of law. Point I-D.

- The existence of "Newbridges" throughout the English-speaking world negates any particular geographic connotation of the goods in question, and controverts any assertion that the

3

relevant American public will draw a goods/place association between Newbridge Cutlery's products and the Newbridge in County Kildare.  Point I-E.

- That the PTO has granted registration to marks containing the term "Newbridge" without deeming them primarily geographically descriptive makes its decision under review here so inconsistent with past practice as to constitute an abuse of discretion as a matter of law.  Point I-F.

Further, as argued in Point II, the only competent evidence – inadequate though it be -- that supports the TTAB's holding that the mark is primarily geographically descriptive is evidence that "Newbridge" has achieved some degree of relevant renown precisely from Appellant's successful efforts over a period of more than 75 years to market its products around the world.  To deny registration to Appellant because of its commercial success, or because Appellant chose to seek extension of protection to a mark already registered abroad, is an invalid misuse of the PTO's power to reject a mark that is primarily geographically descriptive, and contradicts the PTO's uniform practice of registering marks such as WATERFORD crystal and CORNING glassware in which the town of origin became known in the United States because of the efforts of the applicant.

## STANDARD OF REVIEW

This Court reviews conclusions of law *de novo*. To the extent that the TTAB failed to require proof of the relevant American consuming public, and permitted evidence of primary geographic descriptiveness based upon Appellant's own success in making its products known in the American market, the legality of this omission and of reliance on Appellant's activities are conclusions of law as to which no deference is due. To the extent that the TTAB relied on evidence that was legally relevant and admissible, this Court reviews the TTAB's factual findings of primary geographical significance for substantial evidence. *In re California Innovations, Inc.*, 329 F.3d 1334, 1336 (Fed. Cir. 2003). The substantial evidence standard is considered to be less differential than the arbitrary and capricious standard, and necessitates a stricter judicial review of agency fact finding. *Dickinson v. Zurko*, 527 U.S. 150 (1999); *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1265 (Fed. Cir. 2002)

## STATEMENT OF RELEVANT FACTS

### I. OVERVIEW

Appellant Newbridge Cutlery is an Irish company that manufactures and sells kitchenware and similar products in countries throughout the world. On October 14, 2010, Appellant filed a Request for Extension of Protection to the United States for the mark NEWBRIDGE HOME through the International Bureau ("IB") of the World Intellectual Property Organization under the aegis of the

5

Madrid Agreement and Protocol, under Serial Number 79094236. A15-19. The

mark bears International Registration No. 1068849. Registration in the United

States was sought for a variety of goods that fall mostly within the broad categories

of homeware and silverware.

As detailed herein, registration was refused by the PTO on the ground

that the mark NEWBRIDGE HOME is primarily geographically descriptive to

American consumers and therefore is not entitled to registration under Trademark

Act section 2(e)(2). Registration was refused initially in a first Office Action dated

March 31, 2011, A20-26, and then made final in a Final Office Action dated

December 12, 2011, A76-84. Appellant filed a Request for Reconsideration June

12, 2012, A215-234, which was denied July 15, 2012, A374-376. Appeal was

taken to the Trademark Trial and Appeal Board ("TTAB"), A370, and the refusal

to register the mark was affirmed in an Opinion dated April 29, 2013 ("Opinion"),

A1-10. Timely notice of appeal to this court was filed on June 26, 2013. A558.

The Opinion is factually predicated on "a careful review of the

evidence submitted in this proceeding", which evidence, according to the TTAB,

establishes "that the relevant segment of the American purchasing public would

make the connection between [appellant's] goods and the geographic place named

in the mark." A6. Because the evidence comes nowhere near making that

6

connection, we are constrained to review the evidentiary submissions at some length here.

## II.    THE EXAMINING ATTORNEY'S EVIDENTIARY RECORD

The Examining Attorney produced her evidence, supposedly supporting her contention that the mark NEWBRIDGE HOME is primarily geographically descriptive, in part in her denial of the Request for Reconsideration, in part in her Final Office Action, and in part in her First Office Action. Here, we describe briefly the evidence; in the Argument we demonstrate its inadequacy.

In the denial of the Request for Reconsideration, the Examining Attorney attached the following evidence:

1.    Ten articles, A377-424, from Lexis Nexis' database of Combined News and Business Sources that reference Newbridge, Ireland. The attached articles span a period of at least 14 years (beginning in 1998 to the present).[1] All of these articles are from minor publications, such as, Topeka Capital Journal, Worcester Telegram & Gazette, Daily Record, Morristown, New Jersey, Irish Voice, etc. Not one of these articles goes beyond a passing mention of "Newbridge, Ireland." In fact, the article at A407-409 makes passing reference to Newbridge, County Galway, Ireland (an entirely different region.)

2.    Printouts from the travel website "Tourism Ireland" at www.tourismireland.com , A425-435 The website provides tourism figures for visitors from the U.S. to Ireland. This evidence is probative of the fact that Americans visit Ireland, and nothing more.

---

[1] The search performed by the Examining Attorney does not appear to be date restricted. However, of the adduced articles, the earliest is from March 1998.

3.  "Tourist Statistical Report" of the Republic of Namibia, A436-452  This evidence was presumably included by the Examining Attorney as part of her argument that the country of Namibia and its capital city Windhoek are more obscure than is Newbridge.  We discuss the relevant TTAB case, which found Windhoek not to be primarily geographically descriptive, below at page 20.

4.  Printouts from travel websites at www.distance-calculator.co.uk and http://kildaire.ie showing nothing more than that Newbridge, County Kildare, is a 40-minute drive from Dublin airport and is at a distance of 25 miles out of Dublin, A453-461.  Presumably, the inference that the Examining Attorney wishes to be drawn from these exhibits is that tourists who fly to Ireland elect to visit nearby communities.  Absent some evidence that tourists from America are both incipient purchasers of housewares and actually go to Newbridge to buy the silverware that includes the town's name as the identifier of the manufacturer, these exhibits define irrelevance.

5.  A website entitled "Gregan Tours Ireland", of a privately guided tour company based in County Kildare at www.gregantoursireland.com,  A462-464 (XRR17) and a website of Ganter Chauffeur Drive, a similar private tour company based in Ireland, at http://ganterchauffeur drive.ie/day-tours/retail-tour/ , A465-467.  Irish websites announcing the stops on Irish tours tells one nothing about whether American consumers think of "Newbridge" the town when they are shopping for cutlery, or for that matter ever think of Newbridge the town at all.

6.  A468-492 consists of printouts of the United States registration details of WATERFORD trademarks that were registered under Section 2(f) subsequent to WATERFORD being registered for glassware in 1972 by a company based in Waterford, Ireland.  Because the original 1972 registration was not on the basis of acquired distinctiveness under Section 2(f), if there is any relevance to this exhibit it is that even the name Waterford, which is the name of an Irish city far larger than Newbridge, is not primarily geographically descriptive.  See argument at page 18.

In the final Office Action the Examining Attorney attached the

following evidence:

7.  A website entitled "Newbridge Town, County Kildare, Ireland" at http://newbridge.ie, which is operated by the Kildare County Council, A85-86. It is noted on the website that "silverware is crafted at the famous Newbridge Silver plant." By its own terms, it is the silverware plant, not the town, which is "famous". And there is nothing in the exhibit to indicate it is ever accessed from the US by persons seeking to buy anything.

8.  A website entitled "County Kildare Community Network, Ireland" at http://kildare.ie, which is operated by the Newbridge Town Council, A897-92. Again, without data as to website access and use, this tells the reader nothing about familiarity of Americans with Newbridge.

9.  A website with the Wikipedia entry for "Newbridge, County Kildare", which makes mention of the Applicant as follows, "Cutlery and silverware is crafted at the famous Newbridge Silverware plant." A93-99. Apparently, a contributor, from who knows where, copied the Kildare County Council entry into the on-line encyclopedia. Has this site ever been accessed by an American looking to buy flatware?

10.  A website of the Whitewater shopping center in Newbridge at www.whitewater.ie. A101. No doubt the residents of Newbridge shop there; do any Americans?

11.  Travel websites located at www.discoverireland.com , A102-104, and www.irishtourist.com , A105-107, both operated by private entities in Ireland and both of which indicate that Newbridge, County Kildare, is a place in Ireland, but make no mention of cutlery, silverware or homeware To the extent that this evidence is in any way relevant, it shows that homeware and silverware are not the traditional industries of Newbridge, County Kildare, Ireland.

12.  Travel websites by various Irish local governments and entrepreneurs, A108-131, which highlight the fame associated

9

with Appellant's showroom, restaurant, and its Museum of Style Icons. To the extent these websites are ever visited by Americans considering a homeware purchase, as opposed to potential visitors to Ireland, they show the renown and brand recognition of the Appellant and its marks.

13. Ten more exhibits, A131-182 of articles from Lexis Nexis' database of the entirety of "U.S. News" and "U.S. Newspapers" databases that reference Newbridge, Ireland [2], essentially duplicating the ten articles at A377-424. Other than establishing that the newspaper in Kalamazoo prints the same human interest stories about Irish immigrants to the US that apparently fill the papers in Topeka and Morristown, these exhibits simply clutter the record. Notably missing from the Examining Attorney's submissions is any evidence that anyone from Kalamazoo, Topeka, or Morristown has ever bought a piece of silverware named "Newbridge Home", let alone associated it with the seventeenth largest town in Ireland.

14. A183-204 are selections of webpages from the Applicant's website at www.newbridgesilverware.com. The TTAB accurately interprets these exhibits to demonstrate that "[Appellant] sells its goods online in the United States and through retail outlets (in Missouri, Pennsylvania, Michigan, Illinois, and New York) that feature products from Ireland." A7. From these facts, it draws the conclusion that "The connection between [appellant's] goods and its geographical location of origin are further underscored by [appellant's] marketing practice." *Id.*

That is a non sequitur. What are sold are goods under the mark NEWBRIDGE HOME and using the name Newbridge Silverware. There is not a shred of evidence that a purchaser from or in the United States would believe that the Newbridge" in the name is a place rather than a person's last name or a marketing term that someone thought would be readily remembered. If the fact that a non-American applicant whose

---

[2] The search performed by the Examining Attorney does not appear to be date restricted.

mark happens to be that of a geographical location were to be denied registration because it sells in the US, every such applicant would be denied whatever the obscurity of the place or even whether the place was geographic only in the sense of the land of Oz.  Nothing in the Newbridge Cutlery website indicates that the word "Newbridge" is anything other than a term chosen by an Irish company to distinguish its goods from other silverware manufacturers.

In the first Office Action, the Examiner relied on the following evidence:

15.     The entry for "Newbridge" from the Columbia Gazetteer of the World, A28-29, which indicates that Newbridge is a place in County Kildare, Ireland, but makes no mention that Newbridge is known for homeware and silverware.  In fact it lists "agricultural market; rope manufacturing" as the industries for which Newbridge is known.

16.     Two exhibits, A30-35 and A38-39, that are selections of webpages from the Applicant's website at www.newbridgesilverware.com.  They are probative only of the fact that the goods produced and sold are the goods of a company trading as "Newbridge Silverware", and not that a prospective customer would seek out silverware produced in Newbridge.  They support a "goods/manufacturer" association, not a "goods/place" association.

17.     A36-37 is the definition of "home" from an online dictionary named MSN.   Understandably the TTAB failed to cite this exhibit in its opinion.

## III.    APPELLANTS' EVIDENTIARY RECORD

The Examining Attorney has the burden of establishing a goods/place association.  *In re Wada*, 194 F.3d 1297 (Fed Cir. 1999).  However, Appellant put in the record at the PTO a set of exhibits to its Request for Reconsideration that

demonstrate the renown of the manufacturer, Newbridge Silverware, not the

location where the goods are produced, A236-255, the omission of the Newbridge

in County Kildare from standard geographic references, A263-296, the prevalence

of the name "Newbridge" for towns both in Ireland and in other countries, A255-

262, a plethora of companies and institutions that use the word "Newbridge" in

their name in a non-geographic sense, A287-330, and proof that the term

"Newbridge" or "New Bridge" is both found on numerous marks registered by the

PTO, and is a commonly used term denoting a span over a waterway or other

route, A330-347.  In short, appellant has provided record evidence that the

overwhelmingly primary significance of "Newbridge" is non-geographic.

Perhaps most significantly, Appellant produced record evidence from

the PTO itself that is has granted registration to such products as Waterford crystal,

Belleek  pottery, Poland Spring water, Corning housewares, and Oneida

silverware, without denying those companies registration for their marks because

their place of origin formed their marks and was primarily geographically

descriptive.  A352-369.  See below at 27 - 28.

## ARGUMENT

## INTRODUCTION

The PTO has refused to register the mark "NEWBRIDGE HOME",

which is the name under which the Newbridge Cutlery Company markets its lines

of kitchenware, houseware and silverware throughout the world.  The name

Newbridge Cutlery Company, its trade name Newbridge Silverware, and the

products it produces and sells under the mark Newbridge Home, commemorate its

location in Newbridge, Ireland, where it established itself in 1934.  Then, and now,

the word "Newbridge" is not primarily significant in the United States of any

geographical location in Ireland.  It may be true that over the past 75 years,

customers throughout the world have come to identify NEWBRIDGE HOME

Products with high quality and imaginatively designed houseware and silverware.

Whether anyone in America identifies NEWBRIDGE HOME products with the

small town in Ireland where they are made cannot be ascertained from anything in

the record in this case, and for that reason alone the PTO refusal must be reversed.

In addition, to the extent if any that actual or potential American

purchasers of NEWBRIDGE HOME products realize that there is a town named

Newbridge, Ireland, the evidence produced by the Examining Attorney establishes

that it is NEWBRIDGE HOME and the Applicant that have led to such

recognition, and not the other way around.  No doubt some Americans select the

products of the Newbridge Cutlery Company because they want to purchase

quality products, products marketed under the NEWBRIDGE HOME label.  But

the only inference that can legitimately be drawn from the Examiner's bevy of

references is that the primary significance of coupling the word Newbridge with

the products sold under the NEWBRIDGE HOME mark is that of the company,

not the town. To infer that it is the town, not the company, which has the primary

identification is to penalize Newbridge Cutlery Company for its commercial

success.

## POINT I

### THE MARK IS NOT GEOGRAPHICALLY DESCRIPTIVE

**A.      The Legal Test.**

A mark is primarily geographically descriptive if the following is

demonstrated by the Trademark Office:

> (i)      the Mark's primary significance is a geographic place that is generally known to the relevant American public;
>
> (ii)     the goods for which registration is sought in fact originate in the geographic place identified in the applied-for mark; and
>
> (iii)    the relevant American purchasing public will make a goods/place association, that is, they would believe that the goods identified in the application originate in the geographic place named in the mark.

*See In re Societe Generale des Eaux Minerales de Vittel S.A.*, 824

F.2d 957, 960 (Fed. Cir. 1987)(hereinafter "*Vittel")*; *In re Brouwerij Nacional*

*Balashi NV*, 80 U.S.P.Q.2d 1820,1821 (TTAB 2006).

**B.      Neither the TTAB not the Examining Attorney established who forms the "relevant public"**

Applicant's customers are the average purchasers of homeware,

cutlery, crockery and silverware, not the unusually well-traveled person, or

14

silverware aficionado.  *See Vittel, supra* at 959, a case in which the applied for

goods came within the umbrella of cosmetics, and the court held:

> In dealing with all of these questions of the public's response to
> word symbols, we are dealing with the supposed reactions of a
> segment of the American public, in this case the mill-run of
> cosmetics purchasers, not with the unusually well-traveled…

The Examining Attorney provided no evidence to define the "mill-run

of housewares or silverware purchasers" whose reactions to the Mark might or

might not stir a geographic recognition.  As the TTAB recognized, Op at A6, the

burden is on the Examining Attorney to prove a goods/place association "from the

perspective of the relevant public for those goods or services", quoting from *In re

Joint-Stock Co. "Baik"*, 80 USPQ2d 1305, 1309 (TTAB 2006).

The evidence in the record is that some Americans may have heard of

the Newbridge located in County Kildare from local newspapers, some may have

visited that Newbridge when touring in Ireland, and some may have learned the

phrase "Newbridge Silverware" when searching the Internet for silverware

manufacturers.  But there is no evidence that anyone, anywhere in the US, made a

goods/place association from any of these sources.  Rather, the evidence –

primarily from Appellant's own website – permits only one conclusion; that it is

Appellant and Appellant's goods, and not their place of origin, that is recognized.

**C.** **There is no evidence in the record to establish that the Newbridge in County Kildare is not obscure, minor and remote.**

"A mark is not primarily geographic where the geographic meaning is obscure, minor, remote, or not likely to be connected with the goods." *In re Nantucket, Inc.*, 677 F.2d 95, 99 (CCPA 1982). The test is whether the Examining Attorney has submitted "evidence to establish a public association of the goods with that place if, for example, there exists a genuine issue raised that the place named in the mark is *so obscure or remote that purchasers would fail to* recognize the term as indicating the geographical source of the goods." *Vittel, supra* at 959 (emphasis in original). Put into the present context, the Examining Attorney is required to prove that a relevant American consumer would in fact readily recognize Newbridge as a place name indicating that Newbridge Siverware comes from Newbridge, Ireland.

The key decision on geographic obscurity is *Vittel*. Vittel is the name of a town in France where water is bottled and thence distributed. The water company sought to register the mark VITTEL for a line of cosmetics. The *Vittel* court analyzed the obscurity inquiry as follows:

> There can be no doubt that the PTO has established that Vittel is in fact the name of a small town in the Voges [*sic*] mountain region of France where there is a resort with mineral springs – a spa – where the water is bottled and thence distributed somewhere, but how many people in this country know that? Certainly Vittel is remote and we deem the evidence produced

16

by the PTO insufficient to show that it is not obscure.  We think the evidence is inadequate to show that the bulk of cosmetics purchasers, or even a significant portion of them, would, upon seeing the work Vittel on a bottle of skin lotion or the like, conclude that it is a place name and that the lotion came from there, rather than simply a trademark or trade name of a manufacturer like Chanel, Bourgois, or Vuitton.  *Id* at 959.

Like Vittel, Newbridge is a small town where the major industries -- rope making and agriculture – are not the industry for which the mark is sought.  Newbridge also houses the headquarters of the agency responsible for the exploitation of peat resources in Ireland.  *Id*.  None of the attributes of Newbridge, County Kildare, listed by the TTAB, A5, begin to answer the question, "how many people in this country know that?"  The only evidence in the record that Americans of any ilk, let alone housewares buyers, have ever heard of the town Newbridge comes from local newspaper clips mentioning Newbridge as someone's birthplace.  A377-424, A131-182.  Not a single one of these American articles treats Newbridge, Kildare, in anything other than a passing mention.

Virtually every document submitted by the PTO and relied on by the TTAB about Newbridge comes from Irish puff pieces apparently designed to attract visitors, but with no evidence of any success.  One is told that Newbridge has an important horseracing track, but not from any publication by or directed to fans of horse-racing.  One is told about a dog racing track, but not from the dog racing track industry.  And surely if the Whitewater shopping center is known

anywhere outside of its immediate environs, the news should come from a review of the World's pre-eminent shopping malls, and not from the shops themselves. All this "evidence" is not in any sense independent or confirmatory that any American, let alone any American silverware buyer, has ever heard of or been to Newbridge, Kildare.

It is true that Appellant sells its products in a few stores in the US, and it seeks to sell throughout the world, including the US, through its website, but it is virtually impossible to learn from those sources that the company that makes and sells Newbridge Silverware is located in an Irish town of the same name. See, e.g., A185, in which the only mention of Newbridge as a location is in miniscule typeface at the bottom of a webpage from Appellant's site.

The facts in the present case essentially mirror the facts in *In re Bavaria St. Pauli Brauerie Ag*, 222 USPQ 926, 928 (TTAB 1984), in which the term "Jever" for beer was held not primarily geographically descriptive despite the fact that the beer comes from Jever, a town with over 10,000 inhabitants in Germany. The TTAB held that the evidence did not show that "the purchasing public in America would expect a beer labeled 'JEVER' to come from Jever, West Germany."

There is no evidence of record that suggests that Newbridge has been raised in the consciousness of the average American consumer so as to render it

18

primarily geographically significant. *See In re Namibia Breweries Limited*, 2011 TTAB LEXIS 309 (TTAB Sept. 12, 2011)(hereinafter "*NBL*") ("That is, it must be shown that relevant purchasers would *readily recognize* that the allegedly geographical designation at issue (be it the mark as a whole or the relevant portion thereof) is in fact the name of a geographical place…")(emphasis added.) The record is devoid of any evidence that consumers in the U.S. would "readily recognize" Newbridge to be the name of a geographical place. In fact the evidence clearly shows that the primary significance of "Newbridge" to the relevant American public is minor because of the remoteness and obscurity of Newbridge as a geographic location.

In sum, there is nothing in the small town of Newbridge, County Kildare, that would render it anything other than an obscure and remote geographic location to the average American purchaser of the goods for which registration is sought. The evidence relied upon by the TTAB, namely Irish travel-oriented websites and Appellant's own website, are not probative of a showing that a significant number of relevant American purchasers would know of the geographic significance of NEWBRIDGE as being Newbridge, County Kildare, Ireland. There is no evidence that shows that Newbridge, County Kildare, is a popular tourist destination or has been advertised and promoted as such, or is visited frequently by travelers from the United States on business, or is visited by

19

American scholars with any regularity, or is economically or culturally significant to the average American consumer. While it may be that Newbridge is the home of museums and a race course, arguably known in Ireland, see Opinion at A5, there is no evidence that its museums and race course are known to Americans in general, let alone the subset of Americans who buy homeware and silverware.

In this respect, Newbridge is like Windhoek:

> For example, there is no evidence that Windhoek, Namibia (or Namibia in general) is commonly mentioned or reported on in the American press or other mass media such that, as a result of such coverage, American consumers will have been exposed to the designation "Windhoek" and thus would know of its geographical significance when they encounter applicant's marks. *NBL, supra* at *13.

Further, Newbridge is not found in commonly available political maps of Ireland on the Internet. *See e.g.* printouts of maps available from the following websites, collectively, at A263-296: CIA World Factbook, www.infoplease.com, www.worldatlas.com, www.mapsoftheworld.com, www.lonelyplanet.com, and www.geology.com. Newbridge, County Kildare, is not Ireland's largest city, or even in the top ten largest cities of Ireland; it is not Ireland's capital; its population was approximately 17,000 people in 2006; and is not the nation's administrative, educational, communications, or economic center. Compare Windhoek, Namibia, a city of 233,000 people and the capital of the country of Namibia which

20

nevertheless was held not to be geographically significant to "average American

beer drinkers." *NBL, supra* at *8, *14.

The fundamental fallacy in the TTAB opinion is that the term

"Newbridge" fails to meet the *Vittel* test that purchasers of the goods in question

would recognize the term as indicating the geographical source of the goods.

Absent the requisite proof by the Examining Attorney that "Newbridge" has a

primary geographical meaning to a relevant American consumer, the TTAB

holding must be reversed.

### D. The primary significance of "Newbridge" is not geographical

The primary significance of "Newbridge" is not a geographic location

because the term "Newbridge" consists of the joining of two common words of the

English language, namely, "new" and "bridge." The conjoined word is used as a

mark or trade name by innumerable businesses in the United States and around the

globe, usually to denote/evoke a path from a position of lack to one of fulfillment,

or a means of joining the consumer with his/her goals by means of a "bridge" that

is "new." Amongst others, Newbridge is used by educational institutions,

retirement homes, banks, churches, doctors and brokers. A simple search on

Google for the term "Newbridge" shows that the non-geographic uses of

"Newbridge" as connoting a "new bridge" overwhelmingly outnumber the use of

21

"Newbridge" as a geographic location.[3]  *See* a very small selection from a vast array of providers of services and goods using "Newbridge" in the context of bridging a gap at A287-330.

> The TTAB, Opinion at A10, seeks to counter this argument by noting, "the fact that a term may have other meanings does not necessarily alter the primacy of its geographical significance."  The example upon which the TTAB relies for this proposition is the term "Manhattan", which it notes is both "a borough of New York City" and "an alcoholic cocktail."  No one would have the temerity to argue that "Manhattan" is not primarily significant as the heart of New York City, which trumpets itself as the Capital of the world.  But as demonstrated above, "Newbridge" is just not geographically significant, at least not to American consumers based on the Examining Attorney's submissions.  Unless "Newbridge" in the name of a retirement home or a bank in and of itself calls forth the primary association with a geographic location, the analogy to "Manhattan" is completely inapposite.

---

[3] The use by third parties of the trade name or trademark "New Bridge" (as two separate words) has not been included, although there is no material difference between "New Bridge" and "Newbridge" insofar as this discussion of primarily geographic and other significance is concerned.  The fact remains that Newbridge is a mere conjoining of "new" and "bridge" which is very commonly used in a non-geographic sense.

nydocs1-1018595.5

E.   **That there are numerous "Newbridges" establishes that a goods/place association will not be made with Newbridge, County Kildare.**

There are several geographic locations called "Newbridge", including at least three in Ireland itself, rendering none of these locations particularly distinctive. *See* printout from Wikipedia of "Newbridge" at A255-262, showing at least 21 locations in Ireland, England and Australia named "Newbridge." *Also see In re Eastern National*, 2001 WL 1547936 (TTAB Nov. 29, 2001) (the term "Independence Park" "is not particularly distinctive" because there were Independence Parks in at least ten states.) Usually, the presence of a newly-constructed (at the time) bridge would give an area the name of Newbridge. *See* printouts from Wikipedia of Newbridge, Bath ("The area is named after the New Bridge over the River Avon outside Bath, built in 1734") and Newbridge, County Galway (The English name Newbridge comes from the village's iconic bridge over the Shiven River."), collectively, at A255-262. Indeed, the traditional Gaelic name of the area that is now also known as Newbridge, County Kildare, is An Droichead Nua (trans. The New Bridge.)[4] Moreover, Merriam-Webster's Geographical Dictionary (3-D edn.), A264-267, does not even have an entry for Newbridge, County Kildare. Its only entry for "Newbridge" refers to Abercarn, a coal-mining

---

[4] Similarly, there are towns aplenty with names such as Newcastle, Newmarket, Newtown, etc. in Ireland and elsewhere, rendering no particular town called, say, "Newcastle" particularly distinctive.

region in Wales, formerly known as Newbridge. That Welsh town had a population of approximately 17,500 persons in 1981. *Id.*

In sum, there is no evidence showing that Newbridge is generally known to the American public or is anything other than remote and obscure to the ordinary American customer of the applied-for goods. This obscurity is compounded by the fact that "Newbridge" is in overwhelmingly common use by businesses throughout the world in a non-geographic sense and that there are several towns across many nations named "Newbridge", rendering none of them particularly distinctive. In fact, as argued in the next section below, and in facial contradiction to a claim that Newbridge is primarily geographically descriptive, the USPTO has granted registration to at least 15 marks containing the term "Newbridge", without requiring a disclaimer of the term.

All these factors establish that the Examining Attorney failed to produce proof that a relevant American housewares purchaser would made an association between goods marketed under the names "Newbridge Home" or "Newbridge Silverware, and the town of Newbridge in Ireland. The PTO also failed to provide any evidence that the American public would ignore the primarily and overwhelmingly non-geographic meaning and use of "Newbridge" by businesses in the United States, but will latch onto the small town in Ireland as the "primary significance of "Newbridge."

The TTAB purports to deal with this argument by citing *In re Loew's Theatres, Inc.*, 769 F.2d 764 (Fed. Cir. 1985). That decision supports Appellant. The issue was whether the manufacturer of "Durango" chewing tobacco was misrepresenting to the tobacco-using public that the product actually came from Durango, Mexico. Durango, Mexico, is known as a producer of tobacco, and therefore the mis-representation was established. The would-be registrant argued that because there are other places in the world named Durango there could not be misrepresentation as to origin. This Court held that because it was a misrepresentation case, and because the only Durango that was known for tobacco production was the one in Mexico, the existence of other Durangos did not provide the chewing tobacco producer a defense.

This instant case is not one in which another housewares company wishes to use the term Newbridge to misrepresent the origin of the goods. It is the opposite; Appellant, who created whatever renown inheres in the name "Newbridge Silverware", merely seeks to protect that name from potential competitors in the future. The reason that the producer of Durango chewing tobacco lost was that it was seeking to obtain the benefits that inhere to all tobacco products from Durango, Mexico. To misinterpret that decision as was done by the TTAB is to penalize the company that in fact makes its product in Newbridge, and

to open it to precisely the kind of misrepresentation that is condemned in the Durango case.

**F.    The PTO has granted registration to marks containing the term "Newbridge"**

No less importantly, the Trademark Office has granted registration to several marks containing the term "Newbridge."  S*ee* a printout from the USPTO's computerized TESS database of a selection of a total of 15 live registrations (excluding Applicant's applications) for marks containing the term "Newbridge" at A330-347.  In not a single one of these registrations has a disclaimer for "Newbridge" been required.

These registrations are for goods and services such as consultancy, surgical implants, pre-recorded media in the field of education, books and magazines, trousers, retirement home, banking, education, etc.  "A mark that has a popular significance apart from its geographical meaning is not, in most cases, 'primarily' geographical*."  In re International Taste Inc*., 53 U.S.P.Q.2d 1604, 2000 WL 177409, *2 (TTAB 2000), *citing*, 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, §14:28 (4th Ed. 1999) and *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482 (5th Cir. 1971)("The word 'primarily' should not be overlooked, for it is not the intent of the federal statute to refuse registration of a mark where the geographic meaning is minor, obscure,

26

remote or unconnected with the goods."); *In re Eastern National, supra at* *2 (same).

The TTAB essentially ignores this argument. It writes only that the PTO grant of registrations "do[es] not show that 'Newbridge' is not primarily geographic **in this instance**." Opinion at A10, emphasis added. Given its numerous approvals of the use of "Newbridge" by other registrants, all this can mean is that the TTAB can pick and choose when a word is primarily geographically significant and when it is not. That is *ad hoc* adjudication, and not a principled application of law to facts.

## POINT II

### IF NEWBRIDGE IN IRELAND IS KNOWN TO AMERICAN CONSUMERS, IT IS BECAUSE THE FAME OF APPLICANT'S PRODUCTS HAS MADE IT SO; THE PRIMARY ASSOCIATION OF THE TERM "NEWBRIDGE" IS WITH APPELLANT'S GOODS AND NOT WITH THE TOWN WHERE THEY ARE MADE

The practice of the PTO prior to this case is not to penalize companies for making the town where they are located a known name. The PTO had no problem registering the mark "Waterford" for the glassware company located in that Irish town, the mark "Belleek" for the pottery company located in that Irish town, and the marks "Poland Spring", "Corning", and "Oneida" for the companies that took their names from their locations in the US. A352-369. These are all

places that were sufficiently obscure, absent the fame of the companies there located, that the name in each mark was not primarily geographically significant.

The TTBA has penalized Appellant precisely for its success. Until the setting up of Applicant's factory, the Newbridge, County Kildare, settlement was mostly military barracks, with a tradition of rope-making and agriculture. Uncontroverted evidence of record shows that Applicant developed the homeware and silverware industry in Newbridge, County Kildare, and was, is, and continues to be the only manufacturer of those goods in Newbridge. The Applicant *is* the homeware and silverware industry in Newbridge.

As the TTAB noted, A7-8, 75 years of effort have perhaps made the Newbridge Cutlery Company world renowned. See Declaration of William Doyle, Managing Director of Newbridge Cutlery, A236. But it then draws the erroneous conclusion from the success of the Applicant that it is the town, and not the applicant, that is renowned. What is famous is the Newbridge Silverware plant, see quotes in Opinion, not "Newbridge" the place. There is no proof that there is a goods/place association, only that there is a goods/manufacturer association. See, e.g., *In re Brasserie D'Achouffe*, Serial No. 79107741, TTAB Sept. 26, 2013, at p. 5 (evidence that prospective American beer drinkers are familiar with the small town in Belgium after which a beer is named, including website pictures of the brewery, "is no indication that it is common knowledge amongst beer drinkers that

applicant's beer derives from the town of Achouffe", and the evidence only

establishes that "applicant's *beer* has become 'internationally known in very short

order'")(emphasis in original).

If the TTBA position were the law, it would mean that the more well-

known the applicant, the less likely it will be granted registration for its mark. For

the goods recited in the application, NEWBRIDGE is primarily associated with the

Appellant and is only incidentally with the geographic location, and not the other

way around. The phenomenon, that a place may acquire a secondary signification

due to the renown of a particular manufacturer, was articulated over a century ago

by the United States Supreme Court:

> True the name is geographical; but geographical names
> often acquire a secondary signification indicative not
> only of the place of manufacture or production, but of the
> name of the manufacturer or producer and the excellence
> of the thing manufactured or produced …

*La Republique Francaise v. Saratoga Vichy Spring Co*., 191 U.S. 427,

435, 24 S.Ct. 145, 48 L.Ed. 247 (1903). *Also see In re Trans Continental Records,*

*Inc.*, 62 U.S.P.Q.2d 1541, 2002 WL 448738, *2,3 (T.T.A.B. 2002) (separating

articles that refer to the applicant or its principal); *The Board of Trustees of the*

*University of Arkansas v. Professional Therapy Services*, 873 F.Supp. 1280, 1287,

34 USPQ2d 1241 (W.D.Ark. 1995)(separating 80% of the articles adduced by the

defendant that referred to the plaintiff's own athletic teams and not considering

these probative of the geographic significance of RAZORBACK), *In re Braurerie Aying Franz Inselkammer KG*, 217 USPQ 73, 75, n.4 (TTAB 1984)(evidence refuting alleged obscurity of the town whose name was included in the mark cannot include the name and address of the brewery plan on its own labels). These cases establish that references to the Appellant itself cannot prove that the primary significance of the applied for mark is a geographic location and not the company.

To deny the Appellant its registration on the basis of the evidence relied on by the TTBA is to penalize it for its very success. The Newbridge Cutlery Company has spent three quarters of a century "acquiring something of value and [is] entitled to be protected in the use of it." *Federal Trade Commission v. New River Mining Co.*, 79 F.2d 457, 459 (4th Cir. 1935).[5]

---

[5] If "New River" can be protected, can "New Bridge", or Newbridge, be categorically different? While the cited case sounds in unfair competition, there is no functional distinction between protecting a mark by registration or via a cease and desist order.

## <u>CONCLUSION</u>

For the reasons set forth herein, the opinion of the TTAB should be

reversed and the PTO should be ordered to register Appellant's mark.

Dated:  November 13, 2013

Respectfully submitted,

   /s/  Philip Raible

Philip Raible
Rayner Rowe LLP
75 Rockefeller Plaza – 20th Floor
New York, New York 10019
Telephone:  (212) 763-5068
E-mail:  Phil@raynerrowe.com

*Counsel for Appellant*

ADDENDUM

> THIS OPINION IS NOT A
> PRECEDENT OF THE TTAB

Mailed:
April 29, 2013

UNITED STATES PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

*In re The Newbridge Cutlery Company t/a Newbridge Silverware*

———

Serial No. 79094236

———

Kanishka Agarwala of Anderson Kill & Olick, P.C. for The Newbridge Cutlery Company t/a Newbridge Silverware.

Kristin Carlson, Trademark Examining Attorney, Law Office 105 (Thomas G. Howell, Managing Attorney).

———

Before Bucher, Wolfson and Masiello, Administrative Trademark Judges.

Opinion by Wolfson, Administrative Trademark Judge:

The Newbridge Cutlery Company t/a Newbridge Silverware ("applicant") seeks registration on the Principal Register of the mark NEWBRIDGE HOME (in standard characters) for the following goods, in International Classes 8, 14, 16 and 21:[1]

---

[1] Application Serial No. 79094236 was filed on October 14, 2010, under Section 66(a) of the Trademark Act, 15 U.S.C. § 1141f(a), based on a request for extension of protection of International Registration No. 1068849, registered October 14, 2010. A disclaimer to the word "HOME" is of record in the application.

Serial No. 79094236

    In International Class 8:  Hand tools, namely, razors; cutlery, namely, forks, knives, and spoons; tea spoons; desert spoons; soup spoons; steak knives; carving knives; fish knives; salad forks; pastry forks and all of the foregoing silver-plated.

    In International Class 14:  Jewelry, precious stones; horological and chronometric instruments, namely, clocks and watches; bracelets; necklaces; rings; cuff links; tie pins; earrings; costume jewelry; key rings made of or plated with precious metals; brooches; personal ornaments made of or plated with precious metals.

    In International Class 16:  Silver-plated desktop holders for business cards; silver-plated pen holders; silver-plated pens.

    In International Class 21:  Household or kitchen utensils and containers, namely, spatulas, fish slices in the nature of spatulas, ladles, cooking tongs, colanders, cruet sets, toast racks, flasks, bottle openers; bowls; non-electric candelabra; candlesticks; cocktail utensils, namely, cocktail shakers, cocktail stirrers, cocktail strainers, ice buckets, corkscrews; cooking pots; saucepans; corkscrews; glassware, namely, wine glasses, drinking glasses; crockery, namely, cups, mugs, saucers, plates, serving dishes, bowls, and side-plates; milk jugs; sugar bowls; vases; napkin rings; salt shakers; pepper mills.

    This case is now before the Board on appeal from the final refusal of the Trademark Examining Attorney to register this designation based upon the ground that it is primarily geographically descriptive of applicant's goods under Trademark Act Section 2(e)(2), 15 U.S.C. § 1052(e)(2).  Notification of the refusal was transmitted to the International Bureau pursuant to Section 68(c)(1)(A), 15 U.S.C. § 1141h(c)(1)(A).

2

Serial No. 79094236

When the refusal was made final, applicant appealed and filed a request for reconsideration. The examining attorney denied the request for reconsideration, and the appeal was resumed. We affirm the refusal.[2]

<u>Applicable Law</u>

The test for determining whether a mark is primarily geographically descriptive is whether (1) the primary significance of the mark is the name of a place known generally to the public, and whether (2) the public would make a goods/place association, that is, believe that the goods identified in the application originate in that place. If these elements are met, and if the applicant's goods in fact originate or will originate in or from the place named in the mark, then the mark is primarily geographically descriptive of the goods. *In re Cheezwhse.com Inc.,* 85 USPQ2d 1917, 1919 (TTAB 2008). *See also, In re Societe Generale des Eaux Minerales de Vittel S.A.,* 824 F.2d 957, 3 USPQ2d 1450 (Fed. Cir. 1987); *In re Joint-Stock Co. "Baik",* 80 USPQ2d 1305 (TTAB 2006); and *In re JT Tobacconists,* 59 USPQ2d 1080 (TTAB 2001).

A mark is not "primarily" geographic where the geographic meaning is minor, obscure, remote, or unconnected with the goods. *In re Nantucket, Inc.,* 677 F.2d 95, 213 USPQ 889 (CCPA 1982) (use of a geographic term in a fictitious, arbitrary or fanciful manner is not "primarily" a geographic designation.)

---

[2] As a threshold evidentiary matter, we note that to the extent applicant has objected to the examining attorney's evidence, the objection is overruled. All evidence has been properly submitted during prosecution as attachments to the first and final Office actions and the denial of the request for reconsideration. See Trademark Rule 2.142(d).

Serial No. 79094236

A.    <u>Origin of Applicant's Goods</u>

There is no dispute that applicant's goods originate in Newbridge, Ireland. Newbridge is the site of applicant's headquarters; as applicant explains, "all goods are designed in and dispatch from Newbridge," and applicant "manufactures some of its goods in Newbridge, the remainder being manufactured and packaged abroad."[3]

B.    <u>Primary significance of "Newbridge"</u>

Under the first prong of the test for determining whether NEWBRIDGE HOME is primarily geographically descriptive, we consider whether the primary significance of the term "Newbridge" is that of a geographic location.  Although applicant's mark is NEWBRIDGE HOME, our primary focus under Section 2(e)(2) is on the term "Newbridge" because the word HOME is merely descriptive of a feature of applicant's goods, namely, that they are for use in one's home.[4]    If "Newbridge" is primarily geographically descriptive, the presence of the descriptive term "home" will not convert the mark NEWBRIDGE HOME into a term that is not primarily geographically descriptive.  *In re Compagnie Generale Maritime,* 993 F.2d 841, 26 USPQ2d 1652 (Fed. Cir. 1993) (FRENCH LINE (stylized) primarily geographically descriptive of goods and services from France); *In re Chalk's Int'l Airlines Inc.,* 21 USPQ2d 1637, 1639 (TTAB 1991) (PARADISE ISLAND AIRLINES

---

[3] Response to Office action, October 3, 2011.
[4] In particular, the International Class 21 identification of goods includes "household or kitchen utensils and containers"; applicant describes its NEWBRIDGE HOME goods as "a beautiful range of gifts for the home presented in gift packaging"; and in recognition of the descriptive nature of the term, applicant has disclaimed exclusive rights to the word HOME.

4

Serial No. 79094236

primarily geographically descriptive of the transportation of passengers and goods by air).

Applicant argues that "Newbridge" is not generally well-known to the average purchaser of its goods, but rather, is unknown to the "mill-run American consumer ... who purchases items such as forks, knives, spoons, silver-plated jewelry, etc."[5]  However, the town is the second largest in County Kildare and the seventeenth largest in the Republic of Ireland.[6]  It is listed in the *Columbia Gazetteer of the World,*[7] and appears on the Internet at tourism websites such as the website "www.discoverireland.com," which describes Newbridge as "a large commercial town with plenty of shops, coffee shops, restaurants, hotels and pubs,"[8] and "www.newbridgetown.com," which describes several visitor attractions in Newbridge, one of which is applicant's silverware visitor centre.[9]  That website also notes Newbridge is home to several museums and gardens and numerous historical and battle sites.  Horseracing is described as taking "centre stage" at the Curragh Racecourse in Newbridge, stating that "The County Kildare venue hosts some of the most famous races in the world ...."[10]

Under the first element of the Section 2(e)(2) refusal, we find that the primary significance of the mark NEWBRIDGE HOME is that of a generally known geographic place, i.e., the town of Newbridge, in Kildare County, Ireland.  The first

---

[5] Brief, p. 10.
[6] At http://en.wikipedia.org/wiki/Newbridge, County_Kildare; attached to Final Office action dated December 12, 2011.
[7] At http://www.columbiagazetteer.org; attached to Office action dated March 31, 2011.
[8] Final Office action, exhibit 5.
[9] Id., exhibit 7.
[10] Id.

Serial No. 79094236

element of the Section 2(e)(2) refusal accordingly is established. *Accord, In re Roy J. Mankovitz,* 90 USPQ2d 1246 (TTAB 2009) ("minimal information" sufficient to show "Montecito" is a generally known geographic location).

C.     Goods/Place Association

Where there is no genuine issue that the geographical significance of a term is its primary significance and where the geographical place is neither obscure nor remote, a public association of the goods with the place may ordinarily be presumed from the fact that the applicant's own goods come from the geographical place named in the mark. *See, e.g., In re JT Tobacconists,* 59 USPQ2d at 1082; *In re Roy J. Mankovitz,* 90 USPQ2d at 1249; *In re Handler Fenton Westerns, Inc.,* 214 USPQ 848 (TTAB 1982). However, if genuine issues remain as to whether the geographic meaning is obscure, minor, remote, or not likely to be connected with the goods, the examining attorney bears the burden of establishing a public association of the goods with that place. *In re Wada,* 194 F.3d 1297, 52 USPQ2d 1539, 1540 (Fed. Cir. 1999); *In re Nantucket, Inc.,* 677 F.2d 95, 213 USPQ 889, 893 (CCPA 1982); *In re Joint-Stock Co. "Baik",* 80 USPQ2d at 1309 ("[t]he determination of the goods/place association is made not in the abstract, but rather in connection with the goods or services with which the mark is used and from the perspective of the relevant public for those goods or services.")

Based on a careful review of the evidence submitted in this proceeding, we find that the relevant segment of the American purchasing public would make the connection between applicant's goods and the geographic place named in the mark. The town of Newbridge "developed beside the British cavalry barracks from 1816

6

Serial No. 79094236

onwards."[11]  It was a thriving garrison community at the turn of the 20th century until the British army moved out in 1921.  Around this time, five craftsmen from Sheffield, England decided to move to Newbridge to revitalize the town, and in 1934 they established Newbridge Silverware, taking the name from the town of Newbridge.[12]  Newbridge has been the geographical location from which applicant's goods have originated for over seventy-five years.

The connection between applicant's goods and its geographic location of origin are further underscored by applicant's marketing practice.  Applicant sells its goods online to the United States and through retail outlets (in Missouri, Pennsylvania, Michigan, Illinois, and New York) that feature products from Ireland.[13]

Applicant argues that the popularity of the town is driven in large part by applicant's presence and that its mark "has acquired secondary meaning in the minds of consumers as signifying the applicant."[14]  Applicant has submitted the declaration of its Managing Director, Mr. William Doyle, who states that applicant was the first and is now "the only manufacturer of cutlery, silverware and homeware located in Newbridge, Ireland," and that applicant has been Ireland's "premier designer and producer of cutlery, silverware and associated homeware products" for over 75 years, and the "premier supplier of giftware and homeware

---

[11] Final Office action, exhibit 6.
[12] At http://kildare.ie/newbridge/about-newbridge.asp, attached to Final Office action dated December 10, 2011; exhibit 2.
[13] At www.newbridgesilverware.com; attached to Final Office action, exhibit 22.
[14] Applicant's Request for Reconsideration, p. 11.

7

Serial No. 79094236

products" for at least the last 10 years.[15]  On its website, applicant describes the history of Newbridge and applicant's role in establishing the town as a center for cutlery and silverware production.[16]  Located at the Newbridge Silverware Visitor Centre is the Museum of Style Icons, "a permanent exhibition dedicated to design and style excellence," which includes pieces from vintage Hollywood movies.[17] Applicant's Newbridge Silverware Visitor Centre is listed as a major visitor attraction on several travel websites.[18]  A chauffeur tour of Kildare County includes a stop at the Newbridge Silverware Visitor Centre, describing on its website: "Ireland is renowned the world over for its production of fine silverware and this tradition is proudly carried on at Newbridge Silverware."[19]   The Wikipedia entry identifies applicant as "the famous Newbridge Silverware plant."[20]

The examining attorney's denial of applicant's Request for Reconsideration echoes this statement, wherein it notes, "In the present case, the evidence attached to the previous Office actions demonstrated that Newbridge has numerous tourist attractions and is even 'world renowned' for its production of fine silverware."  The examining attorney however, contends that the fact that Newbridge, Ireland may

[15] Decl. of William Doyle, attached to applicant's Request for Reconsideration, exhibit 1.
[16] At www.newbridgesilverware.com, attached to first Office action, exhibit 2.
[17] At www.kildare.ie, attached to Final Office action, exhibit 2.  In 2009, the Museum served as a venue for a travelling collection of memorabilia associated with the singer Michael Jackson; also in 2009 a collection of personal items belonging to Barbra Streisand was on exhibit at the Museum.  At www.lexis.com; attached to Final Office action, exhibit 13.  Music-related memorabilia from the "Icons of Music II" exhibit went on temporary display in 2011. Id., exhibits 11 and 12.
[18] See, e.g., at www.newbridgetown.com/things-to-see.asp; www.discoverireland.ie.
[19] At www.greganchauffeurireland.ie, attached to Office action dated December 12, 2011, exhibit 9.  See also, at www.gregantoursireland.com, a tour description of the Kildare County Day Tour, highlighting the "Newbridge Silverware & Style Icon Museum." Attached to Denial of Request for Reconsideration, exhibit 17.
[20] At http://en.wikipedia.org; final Office action exhibit 3.

8

Serial No. 79094236

have gained renown due to the applicant's presence in that location "does not subtract from the Section 2(e)(2) analysis."[21] In a footnote, the examining attorney advised applicant that the Office would not consider an amendment to claim the benefit of Section 2(f) of the Trademark Act, "since applicant appears to have entered its goods into commerce in the United States only relatively recently."

Despite the renown of applicant's silverware company, and given that there is no amendment in the record to register the mark under the provisions of Section 2(f), we find that the evidence supports a finding that the relevant purchasing public would primarily view the mark NEWBRIDGE HOME as indicating the geographical source of the goods. To the extent the evidence of record creates a genuine issue regarding the primary significance of Newbridge in the minds of American "homeware" consumers, such that a goods/place association cannot therefore be presumed from the fact that the goods come from Newbridge, the examining attorney has presented evidence sufficient to establish that American consumers of these products would in fact make such as association. Moreover, the town of Newbridge is not sufficiently remote, minor, or obscure that the goods/place association would not be made. *Cf., In re Brauerei Aying Franz Inselkammer KG,* 217 USPQ 73, 75 (TTAB 1983) (despite Germany's reputation as a producer of beer, the small town identified by the mark AYINGER BIER was sufficiently remote so that no goods/place association would be made); *In re Bavaria St. Pauli Brauerei AG,* 222 USPQ 926, 927-28 (TTAB 1984) (geographic significance of JEVER was obscure; held registrable for beer made in Jever, Germany); *In re Brouwerij*

---

[21] Denial of applicant's Request for Reconsideration, p. 3 (unnumbered).

9

Case: 13-1535 Case: 13-1535 CASE PARTICIPANTS ONLY Document: 18 18 Filed: 11/13/2013 Page: 48 Page: 48 Filed: 11/13/2013

Case: 13-1535    Document: 1-5    Page: 14    Filed: 07/30/2013    (50 of 51)

Serial No. 79094236

*Nacional Balashi NV,* 80 USPQ2d 1820 (TTAB 2006) (BALASHI sufficiently obscure or remote to average American beer consumer).

Applicant further argues that the primary significance of the term NEWBRIDGE is not geographic because it has another meaning which derives from the joinder of the words "new" and "bridge." Applicant contends that the mark is used to "denote/evoke a path from a position of lack to one of fulfillment, or a means of joining the consumer with his/her goals by means of a 'bridge' that is 'new.'"[22] Applicant's Request for Reconsideration, p. 6, exhibit 12 shows several printouts from websites for unrelated goods and services, where a phrase (such as "your bridge to financial freedom") or a picture (such as that of a bridge) suggests the connotation advanced by applicant. However, the fact that a term may have other meanings does not necessarily alter the primacy of its geographical significance. *See, e.g., In re Cookie Kitchen, Inc.,* 228 USPQ 873 (TTAB 1986) (that "MANHATTAN" is the name of an alcoholic cocktail does not alter the primary significance of that term as a borough of New York City.) Here, the primary meaning of "Newbridge" is that of a geographic location. The third-party non-geographic uses of "Newbridge" as connoting a "new bridge" do not show otherwise. Likewise, the fact that the Office has granted third-party registrations for marks that include "Newbridge"[23] without requiring a disclaimer of that term do not show that "Newbridge" is not primarily geographic in this instance. None of the third-party registrations, or the third-party websites, are for related goods or services.

---

[22] Applicant's Appeal Brief, p. 12.
[23] Request for Reconsideration, exhibit 13.

Serial No. 79094236

There is nothing in the record to show that the goods or services involved in any of these registrations or websites come from any place named "Newbridge." Even if some of the goods or services involved emanated from a place named "Newbridge," this would not be dispositive. "That there is more than one place bearing the name or that one place is better known than another is not dispositive. The issue is not the fame or exclusivity of the place name, but the likelihood that a particular place will be associated with particular goods." *In re Loew's Theatres, Inc.,* 769 F.2d 764, 226 USPQ 865, 868 (Fed. Cir. 1985).

Based on the evidence of record herein, we find, under the second element of the Section 2(e)(2) refusal, that a goods/place association exists between applicant's goods and the geographic place named in the mark.

*Decision*:    Applicant's mark NEWBRIDGE HOME is primarily geographically descriptive of applicant's goods.  The refusal to register the mark under Trademark Act Section 2(e)(2) is affirmed.

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2103, I caused the foregoing brief to be filed with the Clerk of the U.S. Court of Appeals for the Federal Circuit using the CM/ECF system.

I further certify that I caused a true and correct copy of the foregoing brief to be served through the CM/ECF system on the following:

Nathan K. Kelley - e-mail - nathan.kelley@uspto.gov
Thomas Casagrande – e-mail – thomas.casagrande@uspto.gov
Christina Hieber – e-mail – christina.hieber@uspto.gov

Office of the Solicitor – US Patent & Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450

    /s/  Philip Raible
Philip Raible
Rayner Rowe LLP
75 Rockefeller Plaza – 20th Floor
New York, New York 10019
Telephone:  (212) 763-5068
E-mail:  Phil@raynerrowe.com

*Counsel for Appellant*

# CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 7858 words, as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii); and

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.

Dated:  November 13, 2013

    /s/  Philip Raible
Philip Raible
Rayner Rowe LLP
75 Rockefeller Plaza – 20th Floor
New York, New York 10019
Telephone:  (212) 763-5068
E-mail:  Phil@raynerrowe.com

*Counsel for Appellant*